# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

FRANK J. LAWRENCE, JR.,

    Plaintiff,

v.                                                                          CASE NO. 4:05cv14-RH/WCS

PAUL J. SCHWIEP, et al.,

    Defendants.

_____/

## ORDER OF DISMISSAL

    The Florida Board of Bar Examiners filed charges against plaintiff challenging his fitness to practice law in Florida. While those charges were pending, plaintiff filed this action, asserting the Board was proceeding in violation of the United States Constitution. In *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982), the Supreme Court held that a federal action challenging ongoing bar disciplinary proceedings is barred by the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Finding *Middlesex* controlling, I dismiss this action.

# I
# The Bar Admission Process

Under Florida law, an applicant who passes the bar examination is entitled to admission to the Bar if and only if he meets the state's "character and fitness" requirements. "The purpose of the character and fitness screening before admission to The Florida Bar is to protect the public and safeguard the judicial system." Fla. Bar Admiss. R. 1-14.1. The Florida Board of Bar Examiners, an arm of the Florida Supreme Court, reviews an applicant's background, may conduct an informal hearing (*see* Fla. Bar Admiss. R. 3-22), and determines either that the applicant has met the character and fitness requirements or that "specifications" should be filed "charging the applicant or registrant with matters which if proven would preclude a favorable finding by the Board." Fla. Bar Admiss. R. 3-22.5. An applicant who contests the specifications is entitled to a formal evidentiary hearing. Fla. Bar Admiss. R. 3-23.2.

Following the formal hearing, the Board again determines, now based on the evidence presented at the hearing, whether the applicant has established his or her character and fitness to practice law. If the Board concludes that the applicant has *not* established his or her character and fitness, the Board must enter findings of fact and conclusions of law. Fla. Bar Admiss. R. 3-23.7. An unsuccessful applicant has a right of review by the Florida Supreme Court, which may

independently review the record, *see Florida Bd. of Bar Examiners Re: L. K. D.*, 397 So. 2d 673 (1981), and address all challenges to the Board's determination, including those based on the United States Constitution.  Absent review by the Florida Supreme Court, the findings of the Board become final.  Fla. Bar Admiss. R. 3-23.7.

## II
## Facts

Plaintiff Frank J. Lawrence, Jr., a resident of Michigan, applied for admission to the Florida Bar in 2001.  He passed the bar examination.  The Florida Board of Bar Examiners undertook a character and fitness review and conducted an informal hearing on January 16, 2003.

On November 25, 2003, the Board filed specifications charging Mr. Lawrence with conduct purportedly demonstrating his unfitness to practice law.  A formal hearing on those specifications was held on November 19, 2004.  At the outset of the hearing, Mr. Lawrence, who was not represented by counsel, purported to reserve his constitutional defenses for adjudication in federal court.  Mr. Lawrence also asked to withdraw his application for admission.  The Board denied the request.

The hearing went forward.  On February 18, 2005, the Board issued its findings of facts and conclusions of law and recommended that the Supreme Court

deny Mr. Lawrence admission to the Bar.

Meanwhile, on January 14, 2005—after the hearing but before issuance of the Board's findings and conclusions—Mr. Lawrence filed this action, naming as defendants the Board's chairman and executive director and the Chief Justice of the Florida Supreme Court. Mr. Lawrence asserts the Board has violated the First and Fourteenth Amendments by (1) considering protected speech in evaluating his character and fitness; (2) requiring disclosure of protected activities; (3) considering documentary evidence from witnesses immune from subpoena and thus denying Mr. Lawrence an opportunity to confront and cross-examine those witnesses; (4) considering arrests that did not result in convictions; and (5) considering Mr. Lawrence's involvement in prior litigation. Mr. Lawrence seeks declaratory and injunctive relief.

Defendants have moved to dismiss on various grounds. Concluding that the action must be dismissed under *Middlesex* and *Younger*, I do not reach the other grounds asserted in the motions.

### III
### Analysis

In *Younger*, the Court held that the defendant in a state criminal proceeding ordinarily may not bring a federal lawsuit challenging the constitutionality of the pending state proceeding. The defendant must, instead, present his or her federal

constitutional defenses in the state proceeding.  In *Middlesex*, the Court extended *Younger* to state bar disciplinary proceedings, which the Court characterized as judicial in character.  *Younger* and *Middlesex* (and other cases in the same line) are based on the interest in avoiding federal interference with ongoing state judicial proceedings seeking to vindicate important state interests and the recognition that federal defenses can be fully and fairly adjudicated in state proceedings of this type.  A long line of cases applies these principles.  *See, e.g., 31 Foster Children v. Bush*, 329 F.3d 1255, 1274-75 (11th Cir. 2003).

Under these cases, whether a federal court should abstain in deference to state proceedings turns on three questions:  "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges."  *31 Foster Children*, 329 F.3d at 1274 (alterations by Eleventh Circuit), quoting *Middlesex*, 457 U.S. at 432.

In the case at bar, precisely as in *Middlesex*, the answer to each of these questions is yes.  Florida bar admission proceedings, like the New Jersey attorney disciplinary proceedings at issue in *Middlesex*, are judicial in nature.  *See* Fla. Bar Admiss. R. 1-11 ("admission of attorneys to the practice of the profession of law is a judicial function."); *cf. Dale v. Moore*, 121 F.3d 624 (11th Cir. 1997) (holding admission decision of Florida Supreme Court "judicial" for purposes of *Rooker-*

*Feldman* doctrine).  Florida's interest in attorney admission is as strong as the interest in attorney discipline involved in *Middlesex*.  And the Florida system afforded Mr. Lawrence a full and fair opportunity to raise constitutional challenges in the Florida Supreme Court—an opportunity as adequate as that provided in *Middlesex* or in any other case involving *Younger* abstention.[1]

In sum, the case at bar is identical to (and thus plainly controlled by) *Middlesex* in all respects except two.  Neither of those two distinctions, however, makes a difference.

First, at the outset of the formal hearing, Mr. Lawrence purportedly reserved his right to present his federal constitutional claims in federal court, thus attempting to invoke the procedure authorized by *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S. Ct. 461, 11 L. Ed. 2d 440 (1964).  There was no such reservation in *Middlesex*.

This does not help Mr. Lawrence, however, because *England* dealt with abstention under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941), and has no applicability under *Younger*.

Under *Pullman*, a federal court abstains from deciding a federal

---

[1] Moreover, if the ability to raise constitutional issues in the Florida Supreme Court were unclear—which it is not—any doubt on this score would properly be resolved in favor of abstention.  *See Butler v. Alabama Judicial Inquiry Commission*, 261 F.3d 1154, 1159 n.6 (11th Cir. 2001).

constitutional issue while a state court resolves an unsettled issue of state law that might render determination of the constitutional issue unnecessary. Under *England*, a litigant who is forced into state court for determination of the unsettled issue of state law may reserve his or her federal constitutional claim for later submission in federal court. But this has nothing to do with *Younger* abstention, which recognizes the ability of state tribunals to resolve not only state issues, but also federal defenses.

In the *Pullman-England* setting, a state court resolves an issue of state law that is distinct from the federal constitutional issue; the state has no overriding interest in having the entire controversy resolved in a single proceeding; and after the state law issue is resolved, a federal court can resolve any remaining federal constitutional issue without undermining the state decision. In the *Younger* setting, in contrast, the state interest in enforcing its laws is front and center; that interest cannot be vindicated until all defenses, including those based on the federal Constitution, are addressed; and federal adjudication of those defenses, either while the state proceeding is ongoing or even thereafter, would interfere with the state's vindication of its interests. An *England* reservation would defeat the entire purpose of *Younger* abstention.

These conclusions accord with an unbroken line of cases holding *England* inapplicable to *Younger* abstention. *See United Parcel Service, Inc. v. Cal. Pub.*

*Utils. Comm'n*, 77 F.3d 1178, 1184 n.5 (9th Cir. 1996) ("[T]he *England* reservation is not available when a federal court abstains pursuant to *Younger*, thereby declining rather than postponing jurisdiction as it would under *Pullman*."); *Ivy Club v. Edwards*, 943 F.2d 270, 280 (3d Cir. 1991); *Temple of Lost Sheep v. Abrams*, 930 F.2d 178, 182-83 (2d Cir. 1991) ("The rationale for allowing reservation of a federal claim in a state court proceeding following *Pullman* abstention in a federal court is thus not applicable to *Younger* abstention."); *Duty Free Shop, Inc. v. Administration de Terrenos*, 889 F.2d 1181, 1183 (1st Cir. 1989) ("*England*, and its reservations, are not relevant . . . in the *Younger* context, where the purpose of abstention is not clarification of state law, but reluctance to interfere with an ongoing state judicial proceeding.").[2]

In short, Mr. Lawrence's purported reservation of his rights under *England* does not call for a result in the case different from that reached in *Middlesex*.

The other difference between the case at bar and *Middlesex* is that Mr. Lawrence is an applicant to the bar, not an existing member. But under the Florida

---

[2] *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299 (11th Cir. 1992), is not to the contrary. *Fields* recognized the availability of a reservation of federal rights when a plaintiff in a Takings Clause case involuntarily proceeds first in state court in order to comply with the exhaustion requirement applicable to claims of that type. Takings cases are not enforcement actions of the type governed by *Younger*, and nothing in *Fields*, or the earlier cases on which it relies, provides the slightest support for any assertion that a reservation of rights is available in the *Younger* setting.

system, an applicant to the bar who passes the examination is entitled to admission unless his or her character and fitness are found lacking. In order to block admission on the ground of character and fitness, the Board must file "specifications" setting forth the basis for its action. Specifications against an applicant are, for present purposes, no different from charges against an existing member of the Bar. In either case, a person who wishes to practice law in Florida is subjected to specific charges that, if sustained, would preclude the person from doing so. In either case, the final decision resides with the Florida Supreme Court based on evidence presented in a formal hearing before an agency that is an arm of the court. In either case, federal constitutional defenses may be presented fully and fairly for determination by the Florida Supreme Court, with federal review available only in the United States Supreme Court by petition for writ of certiorari. And in either case, interference by a federal court with the ongoing proceedings would be equally disruptive. When an applicant is entitled to admission unless pending charges are sustained, those pending charges are, for purposes of *Younger* and *Middlesex*, no different from charges against an existing member of the Bar. *Middlesex* remains controlling.

Finally, two other arguments presented by Mr. Lawrence should be noted. First, it is true, as he notes, that the Eleventh Circuit held abstention improper in *Wexler v. Lepore*, 385 F.3d 1336 (11th Cir. 2004). That case involved parallel

federal and state proceedings seeking to vindicate plaintiffs' constitutional rights. A federal court need not abstain merely because a parallel proceeding is pending in state court, and the Eleventh Circuit so held. What distinguishes *Younger* and its progeny from garden-variety parallel claims is the state's interest in *enforcement* of its laws, either through criminal prosecution or in limited kinds of civil settings—including, for example, proceedings involving membership in the Bar—without undue interference from federal courts. This case is governed by *Middlesex*, not *Wexler*.

Second, Mr. Lawrence seeks to invoke the bad-faith exception to *Younger*. Whatever the precise contours of that exception, it is assuredly narrow. Mr. Lawrence has alleged no facts that would support its application in the case at bar. To the contrary, if the allegations of the case at bar were sufficient to invoke the good faith exception, then the exception would swallow the rule, and there would be little left of *Younger*.

In sum, Mr. Lawrence has been afforded a full and fair opportunity to present his federal constitutional defenses to the Board's charges and procedures in the proceedings before the Board and on review in the Florida Supreme Court. He may not present his constitutional assertions here and thus interfere with the state's attempt to enforce its laws. Accordingly,

IT IS ORDERED:

*Case No: 4:05cv14-RH/WCS*

Defendants' motions to dismiss (documents 9, 10 and 13) are GRANTED. The clerk shall enter judgment stating, "The complaint is dismissed."  The clerk shall close the file.

SO ORDERED this 7th day of October, 2005.

s/Robert L. Hinkle<br>Chief United States District Judge